## AMERICAN ZINC & CHEMICAL CO. v. CULVER & KIDD.

(Circuit Court of Appeals, Fifth Circuit. October 14, 1922.)

No. 3819.

Sales ⬯151—Seller, by selling particular goods to be shipped under the contract to third party, relieved buyer from further obligation.

Where the particular goods to be shipped under sales contract were not identified at the time the contract was entered into, but the minds of the parties thereafter met as to the particular goods to be shipped, the seller, by the sale of such goods to third party on buyer's account, on buyer's refusal to furnish shipping instructions on seller's premature demand therefor, relieved buyer from any further obligation under the contract, since, by sale of the particular goods to be shipped under the contract, seller put it beyond its power to make delivery.

In Error to the District Court of the United States for the Southern District of Georgia; Beverly D. Evans, Judge.

Action by the American Zinc & Chemical Company against Culver & Kidd. Judgment of dismissal, and plaintiff brings error. Affirmed.

Charles H. Hall, of Macon, Ga., for plaintiff in error.

Wallace Miller, of Macon, Ga., and Jos. E. Pottle and John T. Allen, both of Milledgeville, Ga., for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. This is a writ of error, sued out by the plaintiff, to an order dismissing its petition on general demurrer. The petition alleges:

That, on June 15, 1920, plaintiff agreed to sell to defendant, and the latter agreed to buy from the former, subject to confirmation by cable, 50 tons of white arsenic, at 16 cents per pound, f. o. b. New York, to be delivered September-October, 1920; that, in pursuance of an order by cable which plaintiff immediately sent, the arsenic was promptly purchased and shipped, and arrived in New York about July 26th; that plaintiff kept defendant fully advised of such purchase, shipment, and arrival, as and when each occurred; that as early as July 19th plaintiff notified defendant that the arsenic had been shipped on a named steamer, and made a request for shipping instructions, and repeated that request on July 26th, and on the 10th and 20th of August; that by telegrams on the 23d and 26th of July, and by letter on August 20th, defendant declined to furnish shipping instructions, claiming the request therefor was premature; that on August 27th plaintiff notified defendant by letter that, unless shipping instructions were immediately furnished, plaintiff might "have to make other arrangements," and that "it must also be understood that, in case we should have to dispose of the present 50 tons which are reserved for you, you will have no redress in case later on we should be unable to fill your orders at the time indicated by you, although we would, of course, always do our best in that respect"; that on August 30th, in reply to the last-mentioned letter, defendant telegraphed for "samples

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

powdered white German arsenic referred to in your letter," and on the next day plaintiff wrote to defendant, "We are forwarding you under separate cover a sample of the powdered white German arsenic which we have ready to ship you under our contract;" that on September 7th plaintiff sent to defendant the following telegram:

"We must insist upon your now giving us shipping instructions for fifty tons arsenic we are carrying for you in stock New York from September 1st on. If you cannot take delivery of material we can probably sell same here around twelve one-half cents ex warehouse, in which case you will have to pay us difference in cash amounting to three one-half cents pound. Please wire your definite decision."

And on September 8th defendant replied by letter as follows:

"We acknowledge receipt of your wire of September 7th and contents carefully noted. As we have written you on several occasions previous to this fully outlining what we intend to do, we again refer you to your sales contract and ask that you merely live up to this. Any further communications from you with reference to changing this sales contract is entirely unnecessary, and we intend to act as previously outlined."

That defendant did not further communicate with plaintiff, but thereafter plaintiff sent the following letters and telegrams to defendant:

September 10th, a telegram, as follows:

"Without reply our telegram September 7th, in view contents your letter August 20th, we have sold fifty tons arsenic for your account at fourteen one-quarter cents ex warehouse New York. You to pay us cash difference between this and contract price at sixteen cents. Please remit"

—and a letter of like purport.

September 13th, a letter as follows:

"We are in receipt of your letter of the 8th instant. Referring to our contract of June 15th, you will note that the material was sold to you for September/October delivery and that the terms were sight draft against documents New York. As we had not received shipping instructions from you to September 10th, after having frequently requested same from you, we were obliged to exercise our rights under the contract and accordingly sold fifty tons for your account. Should you desire us to endeavor to obtain an additional fifty tons for you for later arrival we would thank you to advise us so that we can see what can be done."

October 21st, a telegram, as follows:

"We are without reply our letter and telegrams September 10th. Are now ready to ship fifty tons arsenic due you under contract from New York although would be willing to postpone shipment of twenty-five tons until next month. Must insist on your furnishing us with shipping instructions, or paying balance on arsenic resold for your account. Please wire reply."

October 27th, a letter in which it is stated:

"We have not received any reply from you to our letters of September 10th and 13th, and consequently must insist that in fulfillment of our contract on your part you either make payment to us of the balance due us of $1,929.02 for the amount of the arsenic we sold for your account, or else furnish us with shipping instructions on the fifty tons we have had ready to ship to you from October 21st of this month. Please let us hear from you by return mail."

The petition concludes by alleging that the market price of the arsenic covered by the contract at the time and place of delivery was

12 cents per pound. The correspondence above mentioned and referred to occurred in the year 1920.

Plaintiff properly concedes that defendant had the right at any time during the contract period to furnish shipping instructions, and to require delivery of the arsenic, and that therefore the sale for defendant's account was premature, and in violation of the contract. But it is contended that, notwithstanding the unwarranted sale, plaintiff had the right thereafter, during the life of the contract, to tender a like quantity and quality of other arsenic. The basis of this contention is that the defendant did not acquiesce in the sale for its account.

The petition does not allege that plaintiff had or was able to deliver other arsenic. The allegations are only that it gave notice of its willingness to make delivery, and that at the end of the contract period, the market price was less by $4,000 than the contract price. But, aside from that, we are of opinion that the minds of the parties met upon the particular shipment of arsenic which plaintiff purchased and placed in storage for defendant, and identified by sample. If it be true that the material was not identified at the time the contract was entered into, nevertheless it became identified prior to the time it was sold, by the conduct of the parties, and by their practical construction of the contract. When the particular material so identified was sold, plaintiff did not notify defendant that other material of like kind and quality would be furnished, but only that plaintiff would endeavor to purchase other material upon defendant's order.

Defendant made no reply, and admittedly no new contract resulted. But the old contract was at an end, because plaintiff, by selling the material which had been contracted for, had put it beyond its power to make delivery, and had relieved defendant of any further obligation. There no longer remained a contract mutually binding upon the parties.

The judgment is affirmed.